FILED
2005 Dec-08  PM 01:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CORINTHIAN K. STEWART,           }
                                 }
        Plaintiff,               }
                                 }      CIVIL ACTION NO.
v.                               }      04-AR-3562-S
                                 }
MILLER WIRE WORKS, INC.,         }
                                 }
        Defendant.               }


**MEMORANDUM OPINION**

Before this court is the motion for summary judgment of
defendant, Miller Wire Works, Inc. ("Miller").  Plaintiff,
Corinthian Stewart ("Stewart"), who is black and suffers from
sleep apnea, is suing Miller, his employer, for alleged
violations of the Americans with Disabilities Act ("ADA"), 42
U.S.C. § 12112(a), and Title VII of the Civil Rights Act of 1964
("Title VII"), 42 U.S.C. § 2000e-2(a)(1).  Because one or more
genuine issues of material fact exist as to whether the sleep
apnea from which Stewart suffers rises to the level of a
disability under the ADA, Miller's motion is due to be denied as
to the ADA claim.  In addition, because a genuine issue of
material fact exists with respect to whether a proper inference
of racial discrimination can be drawn from the circumstances,
Stewart's motion is due to be denied as to the Title VII claim.

*Summary Judgment Facts*[1]

The alleged ADA and Title VII violations arise out of Miller's refusal to transfer Stewart from the night shift, where he currently works, to the day shift.  Stewart maintains that his sleep apnea is a disability under the ADA and that a transfer from the night shift to the day shift is a reasonable accommodation required by the ADA.  Stewart also alleges that Miller's refusal to transfer him was motivated by racial bias in violation of Title VII.  He contends that white employees, similarly situated, were transferred from the night shift to the day shift subsequent to February of 1995.

The February 1995 date is important because this is when Miller asserts that it instituted a policy barring *all* employees from transferring from the night shift to the day shift.  Miller maintains that this policy was initiated upon the promotion of Jerry Horton to the plant manager position on February 27, 1995.

Stewart has worked at Miller since 1993 and has spent that entire time on the night shift.  In January 2004, Stewart made a

---

[1]Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant.  *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir. 1993).  In accordance with this standard, the following statement of facts includes both undisputed facts and the facts according to the plaintiff's evidence, where there is a dispute.

request for transfer to the day shift.  Stewart currently
operates a loom machine at Miller.  A previous employee was
crushed to death by the same loom machine that Stewart now
operates.

*Analysis*

Stewart's Title VII Claims

Stewart claims that Miller violated Title VII by treating
him differently than the way it treated a similarly situated
white employee.  Specifically, Stewart contends that Miller
transferred one or more white employees from the night shift to
the day shift and that several other employees were hired to the
day shift since his request for accommodation.

Miller maintains that it has had a policy since February
1995 of refusing to transfer employees from the night shift to
the day shift.  This policy allegedly arises from the fact that
prompt service is a market niche for Miller and that vacancies in
the night shift are harder to fill than vacancies in the day
shift.  Miller's president, Robin Battles ("Battles"), testifies
that no employee, black or white, has been transferred from the
night shift to the day shift since February 1995.

If testimony by Battles were undisputed, there would be no

genuine issue of material fact, and Miller's motion for summary judgment would be due to be granted with respect to Stewart's Title VII claim.

> In an action alleging discriminatory treatment by an employer on the basis of race..., an individual plaintiff must prove discriminatory motive.  Since this motive or intent is seldom capable of proof by direct evidence, the Supreme Court has established a legal framework which allows a court to infer discriminatory motive on the basis of circumstantial evidence.

*Perryman v. Johnson Prods.*, 698 F.2d 1138, 1141 (11th Cir. 1983) (citing *Inat'l Brotherhood of Teamsters v. U.S.*, 431 U.S. 324, 335 n.15, 97 S. Ct. 1843, 1854 n.15 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824 (1973); and *Tex. Dept. of Commun. Affs. v. Burdine*, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 1093-95 (1981)).  If all of Miller's employees, black and white, who applied for transfers from the night shift to the day shift after February 1995 were denied, there is simply no circumstantial evidence to support an inference of racially discriminatory motive.  In fact, Stewart acknowledges that the only thing that led him to suspect racial discrimination was the transfer of white employees.

However, when the entire record evidence is considered, as it must be, in the light most favorable to Stewart, a genuine issue of material fact appears as to whether any white employees

were transferred after February 1995.  While Battles asserts that employees of both races were denied transfers from the night-shift to the day-shift, Stewart claims that three white individuals were transferred after 1995: Jerry Davis ("Davis") in or around 1996, Jeff Thrasher ("Thrasher") in 1996 and Herbert Martin ("Martin") at an unknown date.  Stewart appears to concede in his deposition that Davis was transferred before February 1995, but the case with respect to Thrasher and Martin is essentially a swearing match between Battles and Stewart.  Such a dispute is for the jury to resolve.

This is not to say that a finding that Thrasher and Martin were transferred after 1995 would conclusively establish discrimination.  A jury could still determine that no racial discrimination took place even though white employees were transferred after February 1995.  This court is simply pointing out that if it were undisputed that no transfers took place after that date, there would be no genuine issue of material fact as to the race discrimination claim, and Miller's motion for summary judgment on that claim would have to be granted.

*Stewart's ADA Claims*

Stewart alleges that his sleep apnea is a disability

recognized by the ADA and that Miller's refusal to transfer him to the day shift constitutes a failure to make a reasonable accommodation in violation of the ADA.

As part of a *prima facie* case of discrimination under the ADA, a plaintiff must show that he or she is disabled. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356 (11th Cir. 2004) (citing 42 U.S.C. § 12112(a)). Under the ADA, an individual is disabled if the individual suffers from "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S. C. § 12102(2); *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004).

In this case, nothing in the record beyond Stewart's bare assertion indicates that Stewart was regarded by Miller or its employees as suffering from a qualifying disability. Miller maintains that Stewart had no difficulty performing his job, and the record contains insufficient evidence for a jury to conclude that Miller or its employees perceived him as having difficulties of a sort that would lead to recognizing him as disabled. Therefore, the key question for the ADA inquiry is whether Stewart actually has an impairment that substantially limits one

or more major life activities or a record of such an impairment.

"Major life activities" include working, *Rossbach*, 371 F.3d at 1357, and sleeping.  *See id.* (noting with apparent approval that sleeping has been recognized by other courts as an "activity significant to everyday life" and, thus, as a major life activity).  Stewart claims both of these activities are substantially impaired by his sleep apnea.

Miller cites numerous cases from other courts that have held sleep apnea is not a disability under the ADA.  *E.g., Mont-ros v. City of W. Miami*, 111 F. Supp. 2d 1338 (S.D. Fla. 2000); *Brown v. Triboro Coach Corp.*, 153 F. Supp. 2d 172 (E.D.N.Y. 2001); *Heisler v. Metropolitan Council*, 339 F.3d 622 (8th Cir. 2002); *Silk v. City of Chicago*, 194 F.3d 788 (7th Cir. 1999).  Each of these cases limited the decision to the specific apnea symptoms and severity in the case at bar.  This court declines to hold that sleep apnea always constitutes or never constitutes a disability under the ADA.  Instead, the court limits its holding to the specific question of whether Stewart's apnea substantially impairs his sleeping and/or working.

### *Sleeping*

The court first addresses the question of whether Stewart's

"sleeping" is substantially impaired.  The court has no difficulty in finding that "sleeping" is a "major life activity." Stewart, in his brief in opposition to summary judgment, argues that he is disabled because his sleeping is substantially impaired by his apnea.  However, on several occasions, Stewart admitted that he has "no problem sleeping" and that his real problem is staying awake at work.

Therefore, the record contains insufficient evidence upon which a jury could fairly conclude that Stewart's "sleeping," as contrasted to "staying awake," is impaired at all, much less substantially impaired.  Assuming, *arguendo*, that Stewart's sleeping is impaired, other courts have held that inadequate sleep alone is not sufficient for a finding of substantial impairment unless the sleep deprivation is severe.  *See Boerst v. General Mills Operations, Inc.*, 25 Fed. Appx. 403 (6th Cir. 2002), *cert. denied*, 535 U.S. 1097, 122 S. Ct. 2294 (2002) ("[g]etting between 2 and 4 hours of sleep per night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA.") (quoted in *Rossi v. Alcoa, Inc.,* 129 F. Appx. 154 (6th Cir. 2005)).  Stewart has not adduced evidence to suggest that he sleeps as poorly as the

losing plaintiffs in these cases.  Taken together with his
admission that he has "no problems sleeping," there is no genuine
issue of material fact with respect to Stewart's claim that his
apnea substantially impairs his ability to sleep.

If Stewart is contending that his inability to *stay awake*
constitutes a substantial impairment of a major life activity,
the contention is implicit and not sufficiently stated to require
a response.  Nevertheless, other courts have held that "[b]y
itself...[staying awake during the day] cannot be considered a
major life activity.  Rather, the difficulty or inability to stay
awake during the day can only amount to a disability if it causes
an impairment of some other life activity."  *Katekovich v. Team
Rent a Car of Pittsburgh, Inc.*, 36 Fed. Appx. 688, 690 (3rd Cir.
2002); *Green v. Pace Suburban Bus*, 15 Am. Disabilities Cas. (BNA)
1543, 24 U.S. Dist. LEXIS 12956 (N.D. Ill. 2004).  This argument
applies by extension to the situation at bar: Stewart's inability
to stay awake during the night shift is only a disability if it
impairs another major life activity, such as working.

For these reasons, Stewart's contention that his apnea
substantially impairs his major life activity of sleeping and his
implicit claim that it impairs the alleged major life activity of
staying awake cannot survive summary judgment.

***Working***

This court next turns to the question of whether Stewart's "working" is substantially impaired.  In a previous opinion, *Garrett v. Bd. of Trustees of U. of Ala. at Birmingham*, 354 F. Supp. 2d 1244 (N.D. Ala. 2005), this court expressed skepticism over whether "working" constitutes a major life activity under the ADA.  As a partial basis for its concerns, the court cited *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200, 122 S. Ct. 681, 692 (2002) and *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004).  In *Toyota*, 534 U.S. at 200, 122 S. Ct. at 692, the Court held that, "[b]ecause of the conceptual difficulties inherent in the argument that working could be a major life activity, we have been hesitant to hold as much, and we need not decide this difficult question today." Citing this language, the Eleventh Circuit noted:

> [T]he Supreme Court...has expressed its reluctance to treat impairment of one's ability to work as an ADA disability. Previously, however, this court has, following ADA regulations and [*Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139 (1999)], treated the activity of working as a major life activity.  In the absence of a more explicit directive from the Supreme Court we do not revisit that conclusion here.

*Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th

Cir. 2004).

Thus, until the Supreme Court holds otherwise, this court will proceed on the assumption that "working" is a "major life activity" under the ADA.

> To demonstrate that an impairment substantially limits the major life activity of working, an individual must show significant restrictions in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

*Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 912 (11th Cir. 1996) (internal quotations omitted).

The question of whether there are genuine issues of material facts on this issue is a close one.  On the one hand, Stewart does not specifically articulate how his apnea precludes him from working a class or range of jobs.  In fact, it is not even clear that he is significantly restricted in the performance of his current job.  His complaint that he "sometimes gets sleepy" and has to splash cold water on his face or drink a caffeinated beverage in order to stay awake is so likely to be a circumstance shared by a high percentage of the workforce that it does not rise to the level of a significant restriction in the performance of his current job, let alone to a class of jobs.  Furthermore, Stewart acknowledges that he is capable of doing the job of machine operator and that he has been able to do his job at

Miller "very well" despite the sleep apnea.

On the other hand, Stewart maintains that "if I sit down too long, I go to sleep and my co-workers have to wake me up," indicating that he has on occasion fallen asleep on the job.[2] He also says he fell asleep at the wheel of his car on one occasion while stopped at a stop sign.

If Stewart truly is unable to stay awake on the job, his major life activity of working may be substantially impaired. Although as yet Stewart has failed to show significant interference with a broad class or range of jobs, it is possible to infer such interference from the weak evidence he has presented.  A jury could reasonably find that an inability to stay awake, if sufficiently severe, could preclude employment in a class or range of jobs.  The degree of severity is a matter for jury evaluation.  It is fair to say that a wide variety of jobs require employees to be awake throughout the work day.  This is particularly true in the class of jobs in which Stewart currently works, namely, a job function that involves heavy machinery.  The importance of remaining alert is especially obvious in light of the fact that one of Stewart's predecessors was killed working on

_____

[2] While Miller contends that Stewart has never fallen asleep on the job, the deposition pages to which Miller's brief cites do not support this proposition.  Neither does any other evidence available in the record.

the same loom machine that Stewart now operates.

It is important to note, however, that an inability to operate the loom, no matter for what reason, will not by itself constitute substantial impairment.  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3)(1); *Brown v. Triboro Coach Corp.*, 153 F.Supp.2d 172, 182-83 (E.D.N.Y. 2001).  As a result, the Second Circuit has held that "an employee who is unsuited to a particular position has not demonstrated an impairment substantially limiting the major life activity of working."  *Brown*, 153 F.Supp.2d at 183 (quoting *Heilweil v. Mt. Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1994)).  Stewart may have difficulty showing that he is significantly restricted over a broad range of jobs, as distinct from his own job.  If so, he will be unable to make it to the jury on substantial impairment.

In short, while this is a close question, when all inferences are drawn in favor of Stewart, as they must be at this juncture, a genuine issue of material fact barely emerges as to whether Stewart's difficulty staying awake on the job substantially impairs his major life activity of working by significantly restricting his ability to work on a broad range or

class of jobs.

### *Qualified Individual With Disability & Reasonable Accommodation*

Because genuine issues of material fact exist as to whether Stewart is disabled, the court turns to the other elements of a *prima facie* ADA discrimination claim, namely, whether Stewart is a qualified individual with a disability and whether transferring him from the night shift to the day shift is a "reasonable accommodation."

The ADA protects only "qualified individuals with disabilities." 42 U.S.C. § 12112(8); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1225 (11th Cir. 2005). A qualified person is "an individual...who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.*

Under the ADA, an employer discriminates by

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

42 U.S.C. § 12112(5)(A). Reasonable accommodation may include:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment

14

or modifications of examinations, training materials or
policies, the provision of qualified readers or
interpreters, and other similar accommodations for
individuals with disabilities.

42 U.S.C. § 12111(9)(B).   Accommodations cause undue hardship if

they cause a "significant difficulty or expense," when considered

in light of the following factors:

(i) the nature and cost of the accommodation needed under
this Act;
(ii) the overall financial resources of the facility or
facilities involved in the provision of the reasonable
accommodation; the number of persons employed at such
facility; the effect on expenses and resources, or the
impact otherwise of such accommodation upon the operation of
the facility;
(iii) the overall financial resources of the covered entity;
the overall size of the business of a covered entity with
respect to the number of its employees; the number, type ,
and location of its facilities; and
(iv) the type of operation or operations of the covered
entity, including the composition, structure, and functions
of the workforce of such entity; the geographic
separateness, administrative, or fiscal relationship of the
facility or facilities in question to the covered entity.

42 U.S.C. § 12111(10).

The court finds that genuine issues of material fact exist

with respect to whether Stewart is a qualified person with a

disability and whether a transfer from the night shift to the day

shift is a reasonable accommodation.  If Stewart's sleep apnea is

found to be a disability, questions of fact exist as to whether

Stewart can perform the essential functions of his position at

Miller and whether a transfer to the day shift is a reasonable

accommodation that does not work an undue burden on Miller in light of the above-stated factors.

*Conclusion*

In light of the foregoing opinion, Miller's motion for summary judgment will be denied by accompanying order.

DONE this 7th day of December, 2005.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE